# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| WENDELL OTIS MANESS and | ) | Case No. 11-40614 |
| CAROLYN HOPE MANESS, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| LEGENDARY STONE ARTS, LLC, | ) | |
| | ) | |
| Plaintiff / Counterclaim-Defendant, | ) | |
| v. | ) | Adversary No. 11-4125 |
| | ) | |
| WENDELL OTIS MANESS and | ) | |
| CAROLYN HOPE MANESS, | ) | |
| | ) | |
| Defendants / Counterclaim-Plaintiffs. | ) | |

## MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANT'S COUNTERCLAIM

This matter comes before the Court on the Plaintiff's motion for summary judgment on the Defendants' counterclaim for actual and punitive damages arising from the Plaintiff's alleged violations of the automatic stay. For the reasons stated below, the Court will grant the Plaintiff's motion.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, discovery, and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.[1] In a motion for summary judgment, the moving party has the initial burden of demonstrating the absence of genuine issues of material fact[2]. Once the moving party has met this initial burden of proof, the non-moving party must set forth specific facts

---

[1] Fed. R. Bankr. P. 7056.
[2] **Error! Main Document Only.***Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1983).

sufficient to raise a genuine issue for trial and may not rest on its pleadings; self-serving allegations or mere assertions of disputed fact are insufficient to defeat the motion.[3]

## BACKGROUND

The Debtors, Wendell Maness ("Maness") and Carolyn Maness, owned and operated a business under the name of M.O. Housing Corporation d/b/a Top Shop North. Jeff Williams and Aaron Toney are the owners of Plaintiff Legendary Stone Arts, LLC. From September 2008[4] to December 2010, Maness purchased fabricated granite countertops from Legendary Stone. These countertops apparently were installed in homes by Maness or were sold to contractors for home installations. When Maness closed the business in or around December 2011, Maness owed Legendary Stone $66,282.71 for fabricated stone countertops on 37 projects. Williams believed that Maness had been paid on all of those projects and had kept the money rather than paying Legendary Stone for the countertops he had obtained from Legendary Stone.

In January or early February of 2011 – before the Manesses filed their bankruptcy petition – Williams called the Jackson County Prosecutor's Office, relayed facts of his dealings with Maness, and, apparently, mentioned the "Missouri Lien Fraud" statute.[5] Based on his conversations with the Prosecutor's Office, Williams understood that he could initiate a criminal matter by filing a complaint with the police department. So on February 15, 2011, Williams and Toney went to the Independence Police Department and filed a complaint.

Two days later, on February 17, 2011, Wendell and Carolyn Maness filed a voluntary Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Missouri. Williams found out that the Manesses had filed their bankruptcy petition on February 20, 2011, when he received a copy of the Notice of Commencement of the Bankruptcy in the mail.

After filing the complaint, neither Williams nor Toney had any contact with the Jackson County Prosecutor's office. And Legendary Stone's counsel has contacted the office only with regard to obtaining testimony from the assistant prosecutor ultimately assigned to Maness's case,

---

[3] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872-73 (8th Cir. 2005).
[4] The pleadings are unclear on the year Maness started buying granite from Legendary Stone; the Complaint states that it was September 2010, but the Motion for Summary Judgment states September 2008.
[5] The parties haven't identified the statute by cite, but Mo. Rev. Stat. § 429.014, entitled "Lien fraud, penalties--claim against original contractor" makes the failure to pay a supplier a Class C Felony under certain circumstances.

Christine Willis. Willis has given deposition testimony that the prosecutor's office was never pressured by anyone to file charges against Maness.

On August 25, 2011, Maness was charged with the Class B felony of theft/stealing. A warrant for Wendell Maness's arrest was issued on September 6, 2011, and he was arrested on September 9, 2011. He was handcuffed and booked and was then released on a $5,000 signature bond.

Maness's criminal case was handled by Major Terry Storey and Detective Steve Breshears of the Independence Police Department. Major Storey was an acquaintance of Williams but he testified that his familiarity with Williams had no effect on the criminal case against Maness and that the case was not handled any differently than any other case. Major Storey also testified that nobody from Legendary Stone ever brought up the issue of restitution or told him, explicitly or implicitly, that the criminal complaint would be dropped in exchange for payment to Legendary Stone.

Between February 17, 2011, when the bankruptcy petition was filed, and September 19, 2011, when the counterclaim was filed, Williams called Major Storey approximately six times and emailed Detective Breshears twice.[6] Major Storey testified that it is not unusual for him to get phone calls from victims checking on the status of criminal cases and that the calls from Williams were no different.

Williams's first email to Detective Breshears on March 2, 2011, stated as follows:

> I wanted to let you know that Mr. Maness will be at the Federal Court House, room 2110B, 400 East 9th St., KCMO, on March 25, 2011, at 10:15 am. He has a meeting of Creditors scheduled at that time. I did not know if this information would be helpful to you, but I am certain he will be there.
>
> Thank you for your efforts on this case.

Detective Breshears wrote a one-line response, thanking Williams for the information.

The second email, dated April 5, 2011, stated:

> I know you forwarded the case to the prosecuting attorney, but I wanted to touch base with you to see if they needed any additional information from us, regarding the case. As of today, I have not been contacted by the prosecutor's office. Obviously, I am anxious to see the case move forward, and am wondering if you had any new information on the status of the case.

---

[6] Williams and Toney were involved in another email exchange with Detective Breshears regarding his coordination of a meeting "regarding the Maness case." But Detective Breshears initiated that exchange and the responses were limited to the logistics of the meeting.

3

Detective Breshears responded, stating that white collar, non-violent cases take weeks or months to go through the system and that he would let Williams know if the prosecutor needed any additional information.

On December 6, 2011, the Jackson County Prosecutor dismissed the criminal charges against Maness.

## DISCUSSION

The criminal prosecution of a debtor is excepted from the automatic stay under 11 U.S.C. § 362(b)(1) unless the "principal purpose" of the prosecution is to collect a dischargeable debt.[7] The Manesses contend that the "Plaintiff's"[8] post-petition contacts with Major Storey and Detective Breshears and Williams's and Toney's failure to become "non-cooperative witnesses" (which would, presumably, cause the prosecutor to dismiss the criminal charge) prove that the principal purpose of the criminal complaint was to collect the debt owed to Legendary Stone.[9] Therefore, the Manesses argue, Legendary Stone violated the automatic stay each time Williams or Toney contacted Major Storey or Detective Breshears. Legendary Stone, on the other hand, contends that the uncontroverted facts prove that the primary purpose of the criminal prosecution of Wendell Maness was not the collection of a debt. Moreover, Legendary Stone maintains that the automatic stay imposes no duty to become a non-cooperative witness.

Legendary Stone is right on both counts.

First, the germane facts put forward by Legendary Stone, *i.e.*, the detailed account of Williams's and Toney's post-petition contacts with Major Storey and Detective Breshears, are wholly devoid of any indication that Williams and Toney were attempting to use the criminal prosecution to collect a debt. Major Storey testified that Williams's calls were nothing more than routine checks on the status of the case and that Williams never sought to manipulate the investigation or prosecution of the criminal case against Maness. And Williams's emails to

---

[7] *In re DeLay*, 48 B.R. 282, 286 (W.D. Mo. 1984) (citing *Johnson v. Lindsey*, 16 B.R. 211 (Bankr. M.D. Fla. 1981)).

[8] Although the Manesses have sprinkled references to Legendary Stone in their pleadings, all of the allegations of improper conduct appear to be directed at Williams and Toney in their individual capacities. Legendary Stone is entitled to summary judgment on that basis, alone. Ultimately, the Manesses' failure to distinguish between Legendary Stone and its principals is irrelevant because the uncontroverted facts support summary judgment in favor of Williams and Toney in their individual capacities as well.

[9] In their response to Legendary Stone's motion for summary judgment, the Manesses concede that the Plaintiff's prepetition filing of the criminal complaint against Maness did not violate the automatic stay. This concession is wise, since by definition, the automatic stay which comes into being upon the filing of a petition cannot be violated before the petition is filed.

4

Detective Breshears were similarly innocuous. Put simply, checking on the status of a criminal complaint, even if expressed with some urgency, is not indicative of an intention to misuse a criminal prosecution or nor does it constitute a separate violation of the automatic stay under 11 U.S.C. § 362(a)(6).   Additionally, there has been no suggestion that Williams or Toney ever contacted Maness, directly or indirectly, pre-petition or post-petition, and threatened that they would pursue criminal charges against Maness unless Legendary Stone was paid.

Once Legendary Stone came forward with these facts, the burden shifted to the Manesses to come forward with facts supporting a finding that Legendary Stone's primary purpose in pursuing the criminal prosecution was to collect the debt owed to it by the Manesses.  But they failed to do this. Their response to Legendary Stone's motion for summary judgment is actually devoid of any affirmative facts.  They simply deny that the facts alleged by Legendary Stone give the whole picture.  That kind of response is insufficient to defeat a motion for summary judgment.[10]

Second, with regard the Manesses' contention that Legendary Stone (*i.e.*, Williams and Toney) had the affirmative duty to become non-cooperative witnesses lest they violate the automatic stay, the Manesses have not cited a single authority to support this contention.  The Court's research has not turned up any such authority, either, and the Court strongly suspects that none is to be found.  Once Williams had lodged his complaint with the police department – an action admittedly taken pre-petition – the prosecution of that case was, according to Assistant Prosecutor Christine Willis, out of Legendary Stone's hands.  And, frankly, it is preposterous to suggest that the Bankruptcy Code requires someone to ignore his civic duty to cooperate with a criminal investigation simply because he is a creditor (or the principal of a creditor) who might benefit from successful prosecution of that criminal case.  In the absence of a duty to become non-cooperating witnesses, the Court finds, as a matter of law, that Williams and Toney did not violate the automatic stay by cooperating with the Independence Police Department and Jackson County Prosecutor's Office in the prosecution of the criminal case against Wendell Maness.

## CONCLUSION

For the reasons stated above, the Court will grant the Plaintiff's Motion for Summary Judgment on the Defendants' Counterclaim.

---

[10] *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586-87 (1986).

Entered this 1st day of May 2012.

<u>/s/ Jerry W. Venters</u>
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed conventionally
or electronically to the counsel of record.